Thank you. And we'll move to our sixth case this morning, Valerie Thomas v. LNNV Funding, LLC and Resurgent Capital Services. Mr. Neuberger. May it please the Court, Emanuel Neuberger for the appellants. Before I begin, I need to apologize. I'm visually imperative. I have to refer to my notes. I sometimes have to get very close to my screen. No disrespect is intended. Thank you. Every case is supposed to begin and end with subject matter jurisdiction. This Court's decision in Ewing in 2022, in Freeman in 2024, and last week in Wood all support the conclusion that Ms. Thomas failed to show that she had Article III standing necessary for the Court's jurisdiction. In addition, a case decided last Thursday in the Sixth Circuit called Lawless v. T Financial would also support that. Lawless dealt with traceability, but I think it also supports the way this Court has gone. What this Court did in Ewing was recognize that publication requires more than that someone say something that is heard by another. It requires that the statement at issue that's allegedly defamatory be understood. It is a low bar, but it is a bar nonetheless. When you take that in conjunction with the Supreme Court statement in Lujan that at trial, at all stages of litigation, the plaintiff must establish standing, and at trial the plaintiff must deduce evidence showing that she possesses standing, what we see is that standing, starting with the pleading as an IOU that the plaintiff writes. At each stage of the proceeding, the plaintiff has to show that there is something in the account, and when it comes time for trial, Lujan tells us the plaintiff has to cash that IOU. Ms. Thomas failed to do that. What I find remarkably admirable is what this Court did in Ewing. This Court set a very low bar for consumers. You did not create a burden where consumers have to go out and hire expert witnesses to show their injury. Both of the plaintiffs in Ewing showed their injury by showing that there was a change in their credit score between the time of the reporting of not disputed and the time it was reported as disputed. Ms. Thomas made no such showing. She would have this Court simply assume that because someone saw her report, that had an impact that would give rise to injury. The case law does not support that. She did not show a single-digit impact on her credit score. Ewing is remarkable in that respect. FDCPA cases tend to be small-dollar cases. The burden of hiring expert witnesses might be severe for a plaintiff, but all that this plaintiff had to do was go out and get two credit reports admissible with a sponsoring witness and show that there was a change in her credit score. She did not do that. And I would argue that the failure to do that is clear evidence that no injury actually existed. Now, there is another factor. This case was brought under Section 1692A of the FDCPA. That section provides that it is a violation to represent or threaten to represent to a third party credit information which is known or which should be known to be false. In this case, the letter at issue differs from the letter in last week's case. In last week's case, Mr. Wood said that his letter should be treated as a dispute. He's actually the author of the letter in this case, but in this case he didn't use the word dispute. He asserted one very narrow factual contention. The amount reported is not accurate. And what we know happened at trial is that at trial Ms. Thomas testified that she agreed on the amount due and that the balance reported was the exact amount that was left after you took her charge-off balance and subtracted her post-charge-off payments. Her testimony shows that the statement was not false. So there is no injury. And one of the things we can see here, and I just want to be clear, unless the Court has questions for me, is this. We can see the difference in a case like this between damages and injury. Under Ewing, Ms. Thomas could have shown injury from an Article III perspective simply by showing that her credit score had changed even by a single digit. Damages still might not be present. She might have shown that she possessed standing, but not shown that she was denied credit, not shown that she paid a higher interest rate, completely failed to show any adverse action in the language of the Fair Credit Reporting Act, but she would still have possessed standing. I don't think Ewing requires a change in credit score. It does not, Your Honor. It requires a showing of understanding. And it does it in the context of what publication means. It's sort of like if I walked into a room where everyone spoke nothing but English and defamed someone in Urdu or Tagalog and they don't understand it. There's no defamation that occurs. What Ms. Thomas did not establish at trial was that anyone understood the trade line at issue. And I only used the credit score because that was what my friend Mr. Phillips did in Ewing, and he was able to very ably show that there was an injury. The bar is so low that if we look at the Mack case, $3 of expenditure is enough to show an injury. In Ewing and the companion case that was heard with it, a change in the credit score. Something in an E-8 case must show that someone understood what was allegedly defamatory, but, of course, in this case the record also shows that the statement was not false. Respectfully, Ms. Thomas had no injury. She showed no injury, and the court should reverse and remand this case to be dismissed for lack of subject matter jurisdiction. I'll reserve the rest of my time for rebuttal unless the court has questions. Thank you. Thank you. Mr. McCormick. May it please the court. Good morning, Your Honors. My name is Seth McCormick, and I represent Ms. Thomas. Last week in Evans, for the third time this court clarified, last week in Wood versus secured credit services, this court reiterated for the third time that the failure to inform a credit reporting agency that the debtor disputed his or her debt will always have an influence on the debtor as the information will be used to determine the debtor's credit score. And this court has consistently held that a failure to include a dispute on a credit report bears a sufficiently close relationship to the common law tort of defamation, which provides an intangible injury to a claimant. Ms. Thomas has done this at every stage of the case. She pled it. At summary judgment, she demonstrated with actual credit reports that the debt was not included in the February credit report and it wasn't. Counsel, my worry is not either the pleading or summary judgment, but the trial stage. Judge Bucklow entered an order precluding the plaintiff from showing damages, from showing injury, on the ground that the plaintiff had not produced any evidence of injury whatsoever. And my concern is that the Supreme Court held in the Defenders of Wildlife case that standing has to be shown at every stage, including trial. So given Judge Bucklow's order and the failure to even try to show injury at trial, don't you have a problem under Defenders of Wildlife? I don't believe so, Your Honor. My understanding is that, I guess as an initial matter, the defendants stipulated to the standing at trial. You can't stipulate to standing. It's impossible. And my point is that they stipulated to the standing. It doesn't matter what the parties agree. Article III requires proof. Right. Defenders of Wildlife says that there must be proof at trial. And they admitted at trial that there was a stipulation and they admitted that defendants received plaintiff's dispute letter on February 1st. On February 3rd, the defendants reported plaintiff's debt to TransUnion but failed to note that that was disputed. The next reporting cycle for plaintiff's account closed on March 3rd, 2021. None of this has to do with injury. It has to. What I'm really asking you to discuss is the effect of Judge Bucklow's bar order, the ruling in limine, and how that interacts with the Supreme Court in Defenders of Wildlife. Well, the FDCPA, as an initial, the FDCPA does not require a showing of actual damages. Look, the way you deal with my question, which concerns Judge Bucklow's order and the Supreme Court's holding, is to address Judge Bucklow's order and the Supreme Court's holding. Sure. Judge Bucklow's order was that we had not, at the motion limiting stage, had not produced enough evidence to demonstrate actual damages. That was her holding. She did not hold that Ms. Thomas was not affected at all. And Judge Cummings actually points that out in some of his rulings, in his determination about what evidence to permit at trial and what evidence not to permit at trial. He stated that, based on her ruling, that the only evidence he was going to permit was related to the three factors of statutory damages. And I don't think the fact that we didn't have evidence sufficient to show an actual damage doesn't mean that the standing doesn't exist. The standing still exists. What evidence do you have that demonstrates that the credit reporting agency actually understood the creditworthiness of the information from LVNV funding shared about Thomas? Sure. Well, the evidence in the record demonstrated at the summary judgment stage that we had credit reports, which the court considered that showed that there was no dispute on February 3rd. And we had credit reports showing that on March 3rd they included the dispute. That demonstrates understanding. The reason it necessitates understanding, as both Woods and Ewing point out, is that they included the representations by LVNV in the credit report itself. So you had the credit report from February 3rd and the credit report from March. Yes, Your Honor. And one showed no dispute, and then the one coming after it showed a dispute. Correct. So it demonstrates that the credit reporting agencies, at least TransUnion, understood that the dispute itself was significant. We also had evidence that during the time period when there was no dispute, TransUnion disseminated the information that was on the credit report to both Equifax and Experian and to three potential creditors. There's Clarity Loans and two others. I can't remember. They're essentially payday lenders. So all of this demonstrates that, you know, if they had reported a dispute, TransUnion would have included it in the credit report in February, and then when they communicated to Experian and Equifax and the creditors, they would have included that dispute. That demonstrates a harm to Mr. Thomas. I want to point one thing out about this issue about whether or not Ms. Thomas disputed the debt. This court has held, even in Evans, that Section 1692E8 does not require an individual's dispute to be valid or even reasonable, just that they dispute it. But there's been a misrepresentation in the testimony about Ms. Thomas's testimony. Her testimony was that she actually attempted to return two items that she was charged for, and those items were – and she did not receive a credit. So she paid all of the amounts that she alleged that she owed and then refused to pay the parts that she didn't receive a credit for because Web Bank Fingerhut refused to give her a refund. So the dispute was legitimate, and under 1692E8 in Evans, it's not even required that it be legitimate. Unless the Court has more questions, I think I've made my points. Thank you. Mr. Newburger, anything further? Yes, Your Honor. I want to start by noting that no credit report came in at trial. There was no ability to authenticate a credit report. There was no sponsoring witness. There was no deposition of a consumer reporting agency. There was no evidence at trial of the contents of the report. Right. Probably as a consequence of Judge Bucklow's bar order, as Judge Easterbrook has noted, which was one of several motions in limine that were litigated in front of two different judges, but she being the original one who entered the bar order, that because there was no evidence of actual damages produced, that that issue was foreclosed at trial, and apparently nobody understood the jurisdictional significance of that ruling. Your Honor, I'd like to think we did, respectfully. Here's the thing. An order in limine is not an evidentiary ruling. It is an order at the threshold of the case that controls the case. It is the duty of a litigant to ask to approach the court during the trial when necessary and ask the court during the trial to reconsider. In point of fact, what we see during the trial transcript is my friend, Mr. McCormick, actually acknowledged to the court he needed to get evidence in to show injury. He was unable to do so. He had no sponsoring witness. He had no one to attest to the consumer report. And, you know, we sat there wondering how he was going to do it. Admittedly, Judge Bucklow never addressed the understanding of the information issue that's addressed in Ewing. With respect to her, she kind of slid by that and never mentioned it once in her order. But here's the thing. Getting a summary judgment and showing standing at the summary judgment stage doesn't do it because in Lujan v. Defenders of Wildlife, the Supreme Court said standing must be established at every stage of the case and at trial by evidence. If that's not the case, district courts would be trying cases where standing had been lost. I've been doing FDCPA cases for my entire career, first as a plaintiff's lawyer and then as a defense lawyer. I've seen this. You could have a plaintiff who had standing, filed for bankruptcy, did not disclose her cause of action, case is closed and discharged, she doesn't own it. My time is up, Your Honor. You can finish the thought. Thank you, Your Honor. The same thing would be true with a class action where a plaintiff is a member of a class, doesn't opt out, and is subject to a class release. She loses her claim, and I've litigated that situation. It is critical that the plaintiff show standing at every stage because it could be lost, and district courts cannot be trying cases where they lack jurisdiction. I thank you very much. Thank you. Thanks to both counsel. The case is taken under advisement.